953 F.2d 1389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony George MONTERO, Defendant-Appellant.
 No. 91-10133.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 11, 1991.*
Decided Jan. 17, 1992.
 
 Before WILLIAM A. NORRIS, BEEZER and LEAVY, Circuit Judges
 MEMORANDUM**
 Appellant Montero was found guilty of four counts of using foreign coins in postage stamp machines, in violation of 18 U.S.C. § 491. He was sentenced to one year imprisonment. We affirm his conviction, but vacate his sentence and remand to the district court for resentencing.
 * This case involves an ingenious scheme to defraud the United States Postal Service. Appellant Montero would purchase large quantities of worthless foreign coins, such as New Zealand and Fiji pennies, Australian 10 cent pieces, and Japanese 10 yen pieces, from foreign currency dealers. Although these coins are worthless on the foreign exchange market, they possess a peculiar quality. Coin machines at United States Post Offices cannot distinguish between these coins and U.S. coins such as a quarter and a dime. Montero would visit the Kapalama post office in Hawaii and feed foreign coins into the stamp machines for long periods of time. In return, he would receive both change and stamp booklets, which he would sell at market value.
 The gains were substantial. For instance, Montero could purchase 40 New Zealand pennies for 40 cents. When he inserted those pennies into a stamp machine, he would get credit for 4 dollars. If he elected to purchase 75 cents worth of stamps, he would receive back $3.25 worth of United States coins. Assuming he could sell the stamps at market value, he could make a profit of 900%.
 Montero was indicted for twenty-six counts of inserting foreign coins into stamp machines. Each count referred to a different day. He was convicted of four counts. On two of those days, Montero was videotaped standing by the machine for five minutes and thirty five minutes, respectively. When the machine was later emptied, the Postal Service found 69 Japanese 10 yen pieces the first time and 882 New Zealand pennies the second time. On a third day, a postal service employee saw someone, whom he later identified as Montero, feeding coins into a stamp machine for a long period of time. When the machine was later emptied, 737 New Zealand and Fiji pennies were discovered. On a fourth day, Montero was videotaped inserting an Australian 10 cent piece which the machine would not accept. Shortly after leaving the machine, Montero was arrested. A search revealed that he had 1,118 Fiji and New Zealand pennies in his possession. At trial, two coin dealers testified that Montero would often come into their shops and purchase foreign coins such as Fiji and New Zealand pennies and Japanese ten yen pieces.
 All of the above evidence was introduced at trial. Prior to trial, the government also moved to introduce evidence of other wrongful acts. These acts referred to similar transactions at the only other stamp machine on the island in which large quantities of foreign coins were found. Two eye-witnesses testified that they had noticed a person, whom they later identified as Montero, feeding coins into the machine at the Ala Moana hotel for long periods of time. When the machine was later emptied, large quantities of foreign coins were discovered. Over Montero's objection, the district court granted the government's motion to introduce this evidence.
 On appeal, Montero essentially argues that the district court abused its discretion in holding that the probative value of the evidence was not substantially outweighed by its prejudicial character and thus admitting the evidence. Implicit to Montero's argument is the concession that the evidence was admissible under one of the exceptions embodied in Federal Rule of Evidence 404(b)[1] and that it satisfied the four criteria that we articulated in cases such as United States v. Marashi, 913 F.2d 724, 735 (9th Cir.1990).[2]
 We need not decide whether the district court abused its discretion in admitting the evidence, nor whether the evidence was admissible, because we hold that, even if the evidence could not have been admitted, the prejudice resulting from the error was "more probably than not harmless." United States v. Castillo, 615 F.2d 878, 883 (9th Cir.1980). The jury convicted Montero only of those four counts (out of twenty-six) for which the evidence was overwhelming: he was either seen or videotaped inserting coins. The jury acquitted him on the remaining counts. In light of the fact that the jury distinguished between counts in which the evidence was overwhelming and counts in which it was tenuous, we are confident that the admission of the testimony about the other wrongful acts was more probably than not harmless.
 II
 Montero next argues that he was denied due process because the district court assumed the prosecutor's role during the trial. He claims that the district court's questioning of some witnesses and its assistance to the prosecutor in introducing evidence amounted to unconstitutional conduct. We disagree. "A federal judge has broad discretion in supervising trials...." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). "[A] district judge has the undeniable right to examine witnesses and call the jury's attention to important evidence." Kennedy v. Los Angeles Police Department, 901 F.2d 702, 709 (9th Cir.1991). "A trial court will be reversed for excessive judicial intervention only if the record 'disclose[s] actual bias on the part of the trial judge [or] leave[s] the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy of partiality.' " Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986). Because defense counsel failed to object to the district court's allegedly erroneous actions at the time of trial and the issue is first raised on appeal, we review the district court's actions under the even more deferential plain error standard.
 Having reviewed the record, we hold that the district court did not plainly err when it posed questions to some of the witnesses and suggested ways in which the government could introduce certain evidence. The record does not "leave [us] with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy of partiality." Shad, 799 F.2d at 531. This case is very much unlike United States v. Jacobs, 855 F.2d 652 (9th Cir.1988), the sole case cited by Montero in which we found that the district court judge engaged in improper adversarial behavior. In Jacobs, the evidence of partiality was overwhelming: the judge criticized the government's handling the case in the jury's presence, offered strategic advice to the attorney for defendant and improperly refused to take into consideration evidence offered by the government. Id. at 654.
 III
 Montero also challenges the district court's enhancement of his presumptively applicable sentencing range from 4-10 months to 8-14 months based on a finding that he obstructed justice within the meaning of Guidelines section 3C1.1. Because his sentence of 12 months is above the maximum of the unenhanced presumptively applicable range of 4-10 months, we must vacate the sentence if we find that the district court erred in enhancing the sentence.
 Guidelines section 3C1.1 provides in relevant part:
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation ... of the instant offense, increase the offense level ... by 2 points.
 Application Note 3(a) states that the enhancement is intended to be applied to a defendant who impedes the investigation of an offense by "threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant [or] witness...." The district court found that Montero obstructed justice when he sent to the Postmaster the following postcard:
 Your inspectors are asking coin dealers if they ever sold foreign coins to me thus implying that I used these coins to rip-off your stamp machines! Either prove that I used them to do so or tell these dealers that I didn't or I'll ask an attorney friend of mine to sue you for defamation of character!! Count on it!!!
 We review for clear error a district court's factual finding that a defendant obstructed justice. United States v. Christman, 894 F.2d 339, 342 (9th Cir.1990). However, whether the conduct in question constitutes obstruction of justice is a question of law subject to de novo review. United States v. Mondello, 927 F.2d 1463, 1465 (9th Cir.1990). The question whether a threat to sue can amount to an obstruction of justice within the meaning of Guidelines section 3C1.1 requires an interpretation of the applicable Guidelines section and is therefore a question of law.
 Application Note 3(a), Section 3C1.1 clearly indicates that the obstruction of justice enhancement was meant to apply to unlawful means to influence witnesses and codefendants. Application Note 2 further states that the obstruction of justice enhancement "is not intended to punish the defendant for the exercise of a constitutional right." The threat to sue government investigators for defamation of character unless they either cease their offending conduct or bring criminal charges is not an unlawful means of influencing the government investigators. Moreover, punishing someone for threatening to bring a suit against federal officials would burden his constitutional rights that might be vindicated in such a suit. Therefore, we hold that a threat to sue government investigators, standing alone, cannot amount to an obstruction of justice under the Guidelines. Accordingly, we VACATE the sentence and REMAND for sentencing within the 4-10 month sentencing range.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 FRE 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [2]
 In Marashi, we stated:
 Bad acts evidence may be admitted for purposes other than bad character so long as it meets the following criteria: (1) The conduct must be admitted to prove an element of the charged offense that is a material issue; (2) in some case (e.g., where establishing modus operandi ) the conduct must be similar to the offense charged; (3) the evidence must be sufficient to support a jury finding that the defendant committed the bad act; and (4) the prior act must not be too remote in time from the commission of the crime charged.
 913 F.2d at 735.